# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | | |
|---|---|---|---|
| **RICHARD BRUCE DEBENEDETTO,** | § | | |
| | § | | |
| **Petitioner,** | § | | |
| | § | **Lead Case:** | **5:18-CV-0619-XR** |
| **v.** | § | **Member Cases:** | **5:18-CV-0620-XR** |
| | § | | **5:18-CV-0621-XR** |
| **LORIE DAVIS, Director,** | § | | **5:18-CV-0622-XR** |
| **Texas Department of Criminal Justice,** | § | | **5:18-CV-0623-XR** |
| **Correctional Institutions Division,** | § | | **5:18-CV-0624-XR** |
| | § | | |
| **Respondent.** | § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Petitioner Richard Bruce DeBenedetto's six Petitions for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Amended Memorandum in Support (ECF No. 4), Respondent's Answer (ECF No. 18), and Petitioner's Reply (ECF No. 20). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### Background

In February 2014, the State charged Petitioner, a physician, by indictment with six counts of prescription fraud. (ECF Nos. 16-3 at 70, 16-5 at 59, 16-7 at 49, 16-9 at 55, 16-11 at 58, and 16-13 at 80). Following Petitioner's waiver of his right to counsel, the State proceeded to trial on one of the charges, where Petitioner, representing himself, was found guilty by a jury of the offense as charged in the indictment. (ECF Nos. 16-31 through 16-34). Prior to sentencing, Petitioner entered into a plea agreement with the State regarding the remaining indictments,

pleading no contest to each of the five remaining charges. (ECF No. 16-35). Thereafter, a sentencing hearing took place before the trial court with respect to all six pending cases against Petitioner, who was represented by counsel at the proceeding. (ECF No. 16-36). The trial court sentenced Petitioner to six years of confinement in each case, with the sentences to run concurrently. *State v. DeBenedetto*, Nos. A1481—A1486 (216th Dist. Ct., Kerr Cnty., Tex. Feb. 26, 2015) (ECF Nos. 16-3 at 108, 16-5 at 86, 16-7 at 104, 16-9 at 82, 16-11 at 85, and 16-13 at 107).

Petitioner appealed to the Fourth Court of Appeals of Texas which affirmed the convictions in an unpublished opinion dated May 25, 2016. *DeBenedetto v. State*, Nos. 04-15-00165-CR, 04-15-00166-CR, 04-15-00167-CR, 04-15-00168-CR, 04-15-00169-CR, and 04-15-00170-CR (Tex. App.—San Antonio, May 25, 2016, pet. ref'd) (ECF No. 17-5). The Texas Court of Criminal Appeals (TCCA) then refused Petitioner's petition for discretionary review (PDR) on November 9, 2016. *DeBenedetto v. State*, Nos. PD-0682-16—0687-16 (Tex. Crim. App.). On April 21, 2018, Petitioner filed six state habeas corpus applications challenging the constitutionality of each of his state court convictions, all of which were denied by the TCCA without written order on June 20, 2018. *Ex parte DeBenedetto*, Nos. 88,525-01 through -06 (Tex. Crim. App.) (ECF Nos. 17-24, 17-27, 17-30, 17-33, 17-36, 17-39).

The same day his state habeas applications were denied, Petitioner initiated the instant federal proceedings by placing six form petitions for federal habeas corpus relief in the prison mailing system. (ECF No. 1 at 10).[1] The petitions raise three allegations concerning the five cases where Petitioner plead no contest: (1) the pleas were not made willingly, knowingly, or voluntarily; (2) the indictments for all of the pled cases were defective; and (3) his plea counsel

---

[1] For purposes of pretrial management, the Court consolidated these cases into the lead case, No. SA-18-CV-619-XR, on July 3, 2018. (ECF No. 5).

was ineffective for failing to object to the lack of magistration prior to his February 2014 arraignment. *Id.* at 7-8. In his Amended Memorandum in Support, Petitioner also raises the following allegations concerning his jury trial: (1) he was denied counsel at his arraignment; (2) the trial court failed to obtain a valid waiver of Petitioner's right to counsel; (3) he was denied his counsel of choice; (4) the record does not support Petitioner's conviction for fraud; (5) his punishment exceeded the statutory range for the offense; (6) his rights under *Miranda*[2] were violated; (7) his rights under *Brady*[3] were violated; and (8) his appellate counsel was ineffective for failing to raise viable claims for relief. (ECF No. 4). In her answer, Respondent avers the petition is timely and not successive, and that each of the claims raised by Petitioner has been exhausted in state court. (ECF No. 18 at 6).

## Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

---

[2]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]     *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

3

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## Analysis

### I.   Claims Regarding Petitioner's Plea-Bargained Cases.

Petitioner's first three grounds for relief challenge the five convictions obtained by his pleas of no contest. Specifically, Petitioner contends these judgments are invalid because (1) the pleas were not made willingly, knowingly, or voluntarily; (2) the indictments were defective because the State incorrectly included the word "and" when describing the offense; and (3) his plea counsel was ineffective for failing to object to the lack of magistration prior to his second

4

arraignment. (ECF No. 1 at 7-8). Each of these claims were raised and rejected by the state court during Petitioner's state habeas proceedings. Because the state court's rejection of the claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent, federal habeas relief is denied as to these allegations.

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's pleas were a voluntary and intelligent choice and was not a result of any misrepresentation. Although he represented himself at his initial trial, Petitioner was represented by counsel at his subsequent plea agreement hearing regarding the remainder of the charges against him. (ECF No. 16-35). At the beginning of the hearing, Petitioner's counsel, Doyle Weaver, indicated his belief that Petitioner was competent, and Petitioner stated he was satisfied with Mr. Weaver's representation. *Id.* at 5. The charges, range of punishment, and plea agreement were read to Petitioner, who indicated that he had discussed the issues with counsel and understood the rights he was giving up. *Id.* at 10, 13-15. Counsel

confirmed he had been through these documents thoroughly with Petitioner and that Petitioner understood the documents he was signing. *Id.* at 16. Petitioner then admitted his pleas were being given freely and voluntarily and that no one forced or compelled him in any way to plead guilty. *Id.* at 19. Following this admission, the trial court concluded:

> Well, what I'm going to do then, you've pled no contest in all five cases— I may be repeating myself. If I am, I'm sorry. But the Court has reviewed the files, the admonitions, waivers and stipulations and accepts those as voluntarily and knowingly signed. The Court accepts your pleas of no contest in each of the five cases, A1481, 82, 84, 85 and 86. The Court finds that the pleas of no contest were knowingly and voluntarily made with full opportunity to consult with your lawyer. And the Court finds that based upon the evidence, your testimony, the documents submitted and the stipulations of evidence and stipulations of your guilt, the Court finds there's sufficient evidence to support a finding of guilt beyond a reasonable doubt for each of the five underlying charges.

> However, I'm going to withhold or defer an adjudication today because of the agreement of counsel, that we will have final sentencing and consider adjudication and sentencing.

*Id.* at 21-22. Petitioner reaffirmed that his pleas were given knowingly, freely, and voluntarily several months later at his sentencing hearing, prompting the trial court to reiterate the conclusion that the pleas were "knowing and voluntary" and made with the "full opportunity to consult with [] counsel." (ECF No. 16-36 at 10-12).

Petitioner's formal declarations in open court carry "a strong presumption of verity" and constitute a formidable barrier to any subsequent collateral attack. *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). But even without the in-court declarations, the voluntariness of Petitioner's plea is demonstrated by Petitioner's signature on the plea-bargain agreements themselves, entitled "Defendant's Plea of No Contest, Waivers, Stipulations of Evidence and Admonishments." (ECF Nos. 17-26, 17-29, 17-35, 17-38, 17-41). Among other things, the agreements state Petitioner was represented by counsel, understood the nature of the charges against him, and entered the pleas freely and

voluntarily. *Id.* Petitioner's signature on the guilty plea documents is *prima facie* proof of the validity of the pleas and is entitled to "great evidentiary weight." *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Thus, because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this Court denies Petitioner's allegation concerning the validity of his guilty pleas. *See Blackledge*, 431 U.S. at 74 (finding "[t]he subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

Furthermore, by entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, such as Petitioner's claim concerning the purported defect in his indictments.[4] *See, e.g., United States v. Williams*, 577 Fed. App'x 379, 380 (5th Cir. 2014) (unpublished); *United States v. Templet*, 431 Fed. App'x 270, 271 (5th Cir. 2011) (same). The waiver likewise includes claims of ineffective assistance of counsel unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea).

Here, Petitioner appears to argue that his plea-bargain counsel, Mr. Weaver, was ineffective because he did not challenge the fact that Petitioner had not been magistrated prior to his second arraignment in February 2014. According to Petitioner, this lack of magistration prevented him from being represented by appointed counsel during the five remaining cases against him. Despite not having appointed counsel for his trial, however, Petitioner was

---

[4]     Petitioner agrees that the alleged defect in his indictments are indeed non-jurisdictional. (ECF No. 1 at 7).

represented by counsel during his plea-bargain proceedings—Mr. Weaver. Petitioner fails to demonstrate how this alleged ineffectiveness relates in any way to the voluntariness of his guilty plea. Accordingly, Petitioner's claim of ineffective assistance, as well as his challenge to the indictments, are both waived by his guilty pleas. Federal habeas relief is therefore denied on the first three claims for relief raised by Petitioner in his original petition (ECF No. 1).

## II.   Claims Regarding Petitioner's Trial.

Petitioner next raises several claims in his amended memorandum (ECF No. 4) challenging the constitutionality of his tried case. These claims allege: (1) he was denied counsel at his arraignment; (2) the trial court failed to obtain a valid waiver of his right to counsel; (3) he was denied his counsel of choice; (4) the record does not support his conviction; (5) his punishment exceeded the statutory range for the offense; (6) his *Miranda* rights were violated; (7) his *Brady* rights were violated; and (8) his appellate counsel was ineffective. Again, each of these claims were raised and rejected by the state court during Petitioner's direct appeal or state habeas proceedings, and Petitioner fails to demonstrate the state court's rejection was contrary to, or an unreasonable application of, clearly established federal law.

### A.   Petitioner's Right to Counsel

#### 1.   The Relevant Facts

The relevant facts surrounding Petitioner's right-to-counsel claims were accurately summarized by the Fourth Court of Appeals during Petitioner's direct appeal proceeding:

> In 2012, [Petitioner] was charged with six counts of prescription fraud. [Petitioner] requested court-appointed counsel, and the trial court initially denied his request. After an evidentiary hearing, the trial court found [Petitioner] was indigent and appointed him counsel. The State thereafter moved to revoke [Petitioner]'s indigence status, alleging that [Petitioner] had obtained employment with an annual salary of $72,000. After an evidentiary hearing on the State's motion, the trial court found [Petitioner] was no longer indigent and released [Petitioner]'s appointed counsel from further representation of [Petitioner].

[Petitioner] then hired his previously-appointed counsel to continue representing him.

After numerous continuances, trial was set for January 28, 2014. On January 27, 2014, [Petitioner]'s counsel filed a motion to withdraw, alleging [Petitioner] had terminated his services. The trial court initially denied the motion but then granted counsel's motion to reconsider. The State moved to dismiss the indictments without prejudice and the trial court granted the State's motions.

The State re-indicted [Petitioner] in February 2014. Approximately seven months later, [Petitioner] had not retained counsel. At a September 11, 2014 pre-trial hearing, the trial court inquired into [Petitioner]'s lack of counsel. At a September 26, 2014 pre-trial hearing, the trial court again inquired into why [Petitioner] had yet to retain counsel. [Petitioner] acknowledged the trial court had previously found [Petitioner] was not indigent. [Petitioner] stated he had a little "under $5,000" and had conferred with lawyers about his defense, and those lawyers had not refused representation. When asked why he had not hired any of those lawyers, [Petitioner] responded, "I don't know. I just didn't get to that point yet." [Petitioner] also stated he knew that if he were indigent, he would have a right to appointed counsel. After completing its questioning into the circumstances surrounding [Petitioner]'s lack of counsel, the trial court admonished [Petitioner] about the risks and disadvantages of waiving his right to counsel. [Petitioner] stated he desired to proceed, even if that meant representing himself. [Petitioner] also signed and filed a written acknowledgment of admonishments concerning self-representation.

The State proceeded to trial on one of the indictments and the jury found [Petitioner] guilty. The trial court assessed punishment at six years in prison. [Petitioner] thereafter entered into a plea agreement with the State regarding the remaining indictments. Pursuant to the plea agreement, [Petitioner] pled no contest to the remaining charges and the trial court convicted [Petitioner] based upon his plea of no contest. [Petitioner] appeals.[5]

(ECF No. 17-5).

2.    Right to Counsel at Magistration (Amended Claim 1)

In his first amended claim, Petitioner alleges he was denied counsel at a critical stage of

the proceedings against him—namely, his second arraignment on February 20, 2014, following

Petitioner's reindictment on the instant charges. Because of his indigence, Petitioner argues, he

should have been appointed counsel prior to his arraignment who would represent him

---

[5]    In the cases for which [Petitioner] entered into a plea bargain, the trial court granted [Petitioner] permission to appeal.

throughout the criminal proceedings. Respondent counters that Petitioner was represented by counsel at the second arraignment by attorney Doyle Weaver, who had represented Petitioner up until that point but had requested to withdraw as counsel prior to his client's reindictment because Petitioner fired him. The record supports Respondent's assertion.

Following the dismissal of the original indictments against Petitioner on January 29, 2014 (ECF No. 16-23 at 22), the State reindicted Petitioner on the instant charges and Petitioner's retained attorney, Weaver, sought to withdraw as counsel. On February 20, 2014, a hearing was held on Weaver's motion to withdraw wherein it was established that Petitioner terminated his contract with Weaver because he did not have the thousand dollars necessary to fulfill the remainder of the contract. (ECF No. 16-24 at 3-15). The trial court questioned Petitioner about his ability to generate income and his search for new counsel and indicated a willingness to set the trial date several months ahead to allow Petitioner time to raise money for an attorney. *Id.* at 7-24. Petitioner agreed with the trial court that he was not seeking indigent status and that he would be able to hire an attorney in the future:

> [Court]: Well, we have—the options are we have is to decline Mr. Weaver's request to withdraw and require him to be ready for trial on this thing, which I don't believe is fair to him since you haven't honored your commitment to him. Another option is to set the trial out far enough where it gives him time to get the money together to hire an attorney, but we don't have any assurance, given that other pending matter, whether or not you're even going to still be employed.
>
> The other one I'm very hesitant about because of your circumstances is to claim that you're indigent and appoint an attorney for you to represent you, but there would have to be a basis for your claim of indigence, and what I'm hearing you say to Ms. Wilke is that you're not claiming indigent. I think your revenue stream is going to be strong enough to hire an attorney; is that correct?
>
> [Petitioner]: That's correct. I'm hopeful, yeah.

* * *

| [Court]: | I think it probably makes sense, given the number of these, and I want this to work for you as far as you getting an attorney, but, Mr.—Dr. Debenedetto, you need to understand. I think you will acknowledge, this Court has been really, really patient with your circumstances, and it was very frustrating last month what happened, but it is what it is. So I would expect that since you're not claiming indigence that you will work very diligently to pull this together so you can get an attorney so we can stay on track for these settings. |
| --- | --- |
| [Petitioner]: | I agree with you completely, Your Honor, and I appreciate the Court. So June? |
| [State]: | June. |
| [Petitioner]: | That's fine. |

*Id.* at 19-20, 24. Thus, Petitioner's assertion that counsel should have been appointed to him due to his indigent status is contradicted by his own statements to the contrary at the hearing.

Moreover, while the trial court ultimately granted Weaver's motion to withdraw as counsel, it was done so only after Petitioner was rearraigned:

| [Court]: | . . . Okay. Now, Mr.—I haven't signed yet your withdrawal, Mr. Weaver, because I would like for you to participate in the arraignment of these cases whereby I'm stating on the record that I'm not obligating you any beyond what we have discussed here today for representation on these new six files, but I would like for you to participate as his lawyer for the arraignment on these six cases. Would you do that? |
| --- | --- |
| [Weaver]: | Yes, Your Honor. |
| [Court]: | And, Dr. Debenedetto, you understand you have been reindicted on six new cases which replace the six old cases? You understand that? |
| [Petitioner]: | I do, Your Honor. |
| [Court]: | And you know what the arraignment is. I present the indictments to you and you enter a plea, and then we set the case for trial. Do |

you have any objection Mr. Weaver being your lawyer for that purpose?

[Petitioner]: Not—not at all, Your Honor.

*Id.* at 31-32. Through Weaver, Petitioner indicated he understood the charges levied against him in each of the indictments and entered a plea of not guilty to each charge. *Id.* at 32-34. As such, contrary to Petitioner's assertions, he was represented by counsel during his rearraignment. Although he argues that Weaver's brief assistance during the hearing constituted only "quasi" representation that violated his right to representation at a critical stage of his trial, he provides no relevant support for such a conclusory assertion. Consequently, Petitioner fails to demonstrate that the state court's rejection of this claim was unreasonable.

3.     Waiver of Counsel (Amended Claim 2)

Petitioner next contends that the trial court failed to obtain a valid waiver of his right to counsel. Petitioner appears to assert that he was never informed of his right to have counsel appointed to represent him if he were found to be indigent. Petitioner's allegation was rejected by the state appellate court on direct appeal and again by the TCCA when it refused Petitioner's PDR. As discussed below, Petitioner fails to show that either court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

In rejecting Petitioner's allegation, the TCCA did not explain its decision and refused Petitioner's PDR without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Uranga v. Davis*, 82 F.3d 282, 287 n.33 (5th Cir. 2018). In other words, the Court must look to

the last reasoned state judgment that considered and rejected Petitioner's claim when reviewing the claim under AEDPA's deferential standard. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals. (ECF No. 17-5 at 3-7). After setting forth the relevant standard for determining whether an individual's waiver of counsel was knowing, voluntary, and intelligent, the court rejected Petitioner's assertion that his waiver was invalid:

> "The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can validly be convicted and punished by imprisonment." *Blankenship v. State*, 673 S.W.2d 578, 582 (Tex. Crim. App. 1984). "[I]t is essential that no criminal defendant be subjected to formal adversarial judicial proceedings without a lawyer unless there is a basis for concluding that he knowingly, voluntarily, and intelligently relinquished or abandoned his right to the assistance of counsel." *Oliver v. State*, 872 S.W.2d 713, 715 (Tex. Crim. App. 1994). "[T]he defendant should be made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Blankenship*, 673 S.W.2d at 583 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).
>
> A trial court may not "sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide; rather, judges must take an active role in assessing the defendant's waiver of counsel." *Id.* "The appearance of a criminal defendant in court without counsel, therefore, necessitates an examination by the trial judge to assure that the defendant is actually aware of his right to retain an attorney and to discover whether he intends to do so." *Oliver*, 872 S.W.2d at 716. "Such a colloquy between defendant and judge . . . is a preliminary matter necessary for the judge to discharge independent duties of his office. If, after such inquiry, it appears that the defendant has resources sufficient to hire a lawyer, whether or not he actually intends to do so, the judge need not appoint a lawyer for him at government expense." *Id.* "In such event, failure of the accused to employ a lawyer may be regarded as an abandonment of his right, assuming he understands the importance of legal counsel and has been given sufficient opportunity to retain one." *Id.*
>
> After an evidentiary hearing on the State's motion to revoke [Petitioner]'s indigent status, the trial court found [Petitioner] was not indigent. There was evidence that [Petitioner] had two houses in addition to the home he rented, an

airplane, and seven motor vehicles. Prior to that hearing, a visiting judge had found that, despite this property, [Petitioner] was indigent because he was not employed and was "property poor." However, at the time of the hearing on the State's motion to revoke [Petitioner]'s indigence status, [Petitioner] had obtained employment with the annual salary of $72,000. [Petitioner] thereafter hired an attorney, whose services [Petitioner] terminated. The trial court further inquired into [Petitioner]'s financial status at the September 26, 2014 pre-trial hearing. [Petitioner] stated he was not indigent, had nearly $5,000 with which to hire an attorney, was actively speaking with lawyers about representation, and they were willing to represent him. When asked why he had not hired any of those lawyers, [Petitioner] responded, "I don't know. I just didn't get to that point yet." At no time during that hearing did [Petitioner] assert he was indigent or that he could not otherwise afford an attorney. [Petitioner]'s decision not to hire an attorney was not due to an inability to afford an attorney, but rather his unwillingness to hire one.

[Petitioner] argues that the trial court erred by not conducting a "penetrating and comprehensive examination of all the circumstances under which a waiver of counsel is tendered as required by *Blankenship v. State*" (emphasis omitted). [Petitioner]'s issue statement suggests the trial court failed to sufficiently re-inquire into his financial status after he was re-indicted. After he was re-indicted, [Petitioner] failed to appear for a status conference and the trial court held a show cause hearing on August 21, 2014. At that hearing, the following exchange occurred between [Petitioner] and the trial court:

> THE COURT: Well, you've hired a—You've paid a lot of money for your children's case and for attorneys on that case. Which basically means that our case—we have been sitting here lingering —
>
> THE DEFENDANT: Quite to the contrary, Your Honor. That's what I'm trying—I'm doing a poor job, but I'm trying to explain that I have acquired funds to hire an attorney. I have been speaking to attorneys for these cases. And I'm almost there. I—I would hate to—to be set back by being found guilty of contempt when I'm so close to having enough funds to hire an attorney for these cases.
>
> THE COURT: Well, I've heard this before. You've told me this before, that you're really close, you're really close and you're working hard and we're in a slow season, we're going to have a busy season. And I think the best thing to do, maybe, is just to get you back in custody and—to get your attention because I mean you—you just didn't call in, you just totally ignored the Court's order. You know we are trying to get this thing moved. We can't let it sit idol [sic].

After further discussion, [Petitioner] once again stated, "I do have an attorney that will take the case." At the September 11, 2014 pre-trial hearing, [Petitioner] stated he had spoken to attorneys but "[a]t this time I'm going to represent myself." The trial court noted:

> You have continually represented to the Court that you would— were going to continue your practice of medicine in Port Isabel, and that by virtue of that, you would be able to afford an attorney. And we have—I don't know how many times, we've been through this quite a while. And I have, as you've acknowledged, been very patient with you about getting an attorney. And you indicated, especially last time after you dealt with the issues pertaining to your children, that you would have the funds to hire an attorney and would do so in time to have an attorney prepared and to go to trial and [sic] October 20th.

> And I—I know that I have been very patient. And quite frankly it's pretty frustrating hearing you say what you've done today, because I know if you have the funds to do that, as you represented you did or would, that you would be able to hire an attorney.

[Petitioner] alluded to not seeing many patients at his practice but stated, "[T]hat's not the problem. The problem is that I just have not found anyone yet to sign an agreement."

> **THE COURT**: Well, do you acknowledge that you have told me that you were working and—with the summer being much busier, that you would—could afford to hire your own attorney?

> **THE DEFENDANT**: I do, Your Honor.

> **THE COURT**: And you've told me that over the phone, on the hearings where I let you appear by phone, and here in person, that you could afford your own attorney and would be doing so. And including last month on August—around August 27th, that you were getting the money together and would be hiring your own attorney so that we could go to trial on October 20th. Do you remember that?

> **THE DEFENDANT**: I do, Your Honor.

The record shows that after [Petitioner] was re-indicted, the trial court inquired into [Petitioner]'s financial status to exclude indigency as the reason why [Petitioner] decided to represent himself. [Petitioner] stated in the trial court that

his financial status was not the reason why he decided to represent himself. The trial court admonished [Petitioner] of the importance of legal counsel and gave [Petitioner] several months to retain counsel. Therefore, the trial court may have regarded [Petitioner]'s failure to employ a lawyer as an abandonment of his right to counsel. *See id.*

[Petitioner] further argues he "was never presented with any documentation to request appointed counsel as required by [article 26.04(o)]." The record reflects that shortly after the first round of indictments, [Petitioner] filed a completed form request for appointed counsel. Furthermore, article 26.04(o) provides, "Before making a determination of whether a defendant is indigent, the court shall request the defendant to sign under oath a statement [that the defendant is indigent]." TEX. CODE CRIM. PROC. ANN. art. 26.04(o) (West 2009). However, the part of the record [Petitioner] cites in support of this position contains a discussion about a financial information form that [Petitioner] stated he had received.

[Petitioner] relies on *Williams v. State*, 194 S.W.3d 568 (Tex. App—Houston 2006), *aff'd* 252 S.W.3d 353 (Tex. Crim. App. 2008), to argue his waiver of the right to counsel was not made knowingly, intelligently, and voluntarily based on his financial inability to obtain counsel. In *Williams*, the court of appeals held the defendant's waiver of the right to counsel was not made knowingly, intelligently, and voluntarily because "not once did the trial court inform appellant of her right to have counsel appointed . . . if she was unable to hire an attorney on her own . . . . In addition, the trial court was put on notice . . . that appellant was possibly indigent . . . [and] was mistaken when it informed the parties . . . that he had received no information on appellant's financial status." *Id.* at 578. Here, however, the trial court informed [Petitioner] of his right to have counsel appointed if he was unable to hire his own, and [Petitioner] signed and filed an acknowledgment that he understood this right. Furthermore, after being made fully aware of [Petitioner]'s finances, assets, and expenses, the trial court found [Petitioner] was not indigent. [Petitioner] did not argue in the trial court that his financial status had changed after the second round of indictments. Instead, [Petitioner] agreed he was not indigent. Thus, *Williams* is distinguishable.

(ECF No. 17-5 at 3-7).

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. Again, a state appellate court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

Moreover, this Court has independently reviewed the record and finds the evidence clearly indicates Petitioner was not indigent and knowingly and voluntarily waived his right to representation. Thus, viewing all of the evidence under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to federal habeas relief.

### 4. Counsel of Choice (Amended Claim 3)

In his third and final allegation concerning his right to counsel, Petitioner contends he was denied his right to counsel of his choice at trial due to the trial court's failure to grant his request for a continuance at the beginning of his jury trial. Just prior to opening statements, Petitioner requested a continuance to retain the services of an attorney who was "willing to consider" representing him but was not able to appear in court for at least another week. (ECF No. 16-32 at 6). In denying this request, the trial court noted:

> But with—with all due respect, Dr. Debenedetto, I've heard this before, I'm going to get an attorney, I'm going to get an attorney, I've talked to an attorney, my attorney is going to be here next week. And it never seems to materialize. And so—and I—and I've told you, very firmly the last few times before yesterday, that we would be going today. And—and in the Court's opinion, you've had ample time. You've asked for much, much time to get the resources to obtain an attorney. I mean, months and months and months. And you kept telling me over last spring and the summer that you needed a little more time, a little more time. And I always granted it. And then as it turns out you got that money together and you used it for other reasons. For example, on your family—the family case, your CPS case, or for other reasons. So I'm—I'm saying this as respectfully as I can, I've heard this story from you before. So we're going to have to go ahead and proceed.

*Id.* at 7. Petitioner contends the trial court's ruling denied him counsel of his own choosing and unreasonably limited counsel's right to time to prepare for trial. The claim is without merit and does not warrant federal habeas relief.

The Sixth Amendment right to counsel in a criminal proceeding has "long been construed to include a criminal defendant's qualified right to retain counsel of the defendant's

own choosing." *Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004) (citing *United States v. Hughey*, 147 F.3d 423, 429 (5th Cir. 1998)). But that right is not absolute. *Id.* A defendant must only be given "a fair or reasonable opportunity to obtain particular counsel." *United States v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992). When a defendant has been given a reasonable opportunity to obtain counsel of his choice, the court retains broad discretion in evaluating a request for a continuance. *Ungar v. Sarafite*, 376 U.S. 575, 590–91 (1964). This Court must examine several factors when reviewing a state court's denial of a continuance that the defendant claims interfered with his "fair and reasonable opportunity" to obtain particular counsel:

> (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

*Newton*, 371 F.3d at 255 (citing *Gandy v. Alabama*, 569 F.2d 1318, 1324 (5th Cir. 1978)).

Here, although it appears Petitioner was only requesting a one or two week continuance, the balance of the remaining factors weigh heavily in favor of the trial court's ruling. As demonstrated throughout the record, the trial court exhibited a great deal of leniency and granted Petitioner numerous continuances in order to allow him plenty of time to hire an attorney, but Petitioner ultimately elected to waive his right to counsel and represent himself. At the time of his last-minute request, Petitioner still had not obtained counsel to represent him as he now asserts—rather, he only found an attorney "willing to consider" representing Petitioner if Petitioner paid him, something Petitioner repeatedly failed to do. The request thus appears to be another attempt by Petitioner to delay his trial, one that would clearly inconvenience the trial court, prosecution, witnesses, and the impaneled jury.

Again, a trial court has broad discretion in evaluating a request for a continuance, and has the power "to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006). Indeed, "trial courts must necessarily be wary of last minute requests to change counsel lest they impede the prompt and efficient administration of justice." *See United States v. Pineda Pineda*, 481 Fed. App'x. 211, 212 (5th Cir. 2012) (quoting *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985)); *United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984) (holding that "it is within the judge's discretion to deny a change of counsel on the morning of trial if the change would require a continuance."). Petitioner fails to demonstrate that the trial court's exercise of discretion in this case prevented him from having a reasonable opportunity to obtain counsel of his choice. Federal habeas relief is therefore denied.

**B.      The Guilt/Innocence and Punishment Phases**

1.      The "No Evidence" Claim (Amended Claim 4)

In his fourth amended claim for relief, Petitioner asserts that "the State's factual determination was not supported by the record as a whole." (ECF No. 4 at 30). According to Petitioner, the State failed to produce "a scintilla of evidence" that he committed prescription fraud as defined by Texas Health and Safety Code § 481.129(c), the statute under which he was indicted. Petitioner did not challenge the sufficiency of the evidence on direct appeal. Instead, Petitioner raised this allegation during his state habeas proceedings which the TCCA rejected without written order.

Texas courts have consistently held that claims of sufficiency of the evidence must be raised on direct appeal and are not cognizable in post-conviction writs of habeas corpus. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency

claims are not cognizable in post-conviction collateral attacks); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing this legal principle under Texas law). As such, the TCCA has held that, "where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable." *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Citing *Ex parte Grigsby*, Respondent contends Petitioner's claim is procedurally barred because claims of insufficient evidence are not cognizable on state habeas in Texas, thus the state court's denial must have been based on state procedural grounds.

Acknowledging that challenges to the sufficiency of the evidence are not cognizable on state habeas, Petitioner clarifies that his claim is not an insufficient-evidence claim, but rather a "no evidence" claim. (ECF No. 4 at 53-54) (citing *Ex parte Perales*, 215 S.W.3d 418, 419-20 (Tex. Crim. App. 2007)). In *Ex parte Perales*, the TCCA held:

> It is well settled that a challenge to the sufficiency of the evidence is not cognizable on an application for a post-conviction writ of habeas corpus. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). However, a claim of no evidence is cognizable because "[w]here there has been no evidence upon which to base a conviction, a violation of due process has occurred and the conviction may be attacked collaterally in a habeas corpus proceeding." *Ex parte Coleman*, 599 S.W.2d 305, 307 (Tex. Crim. App. 1978). If the record is devoid of evidentiary support for a conviction, an evidentiary challenge is cognizable on a writ of habeas corpus.

215 S.W.3d at 419-20; *see also Ex Parte Knight*, 401 S.W.3d 60, 64 (Tex. Crim. App. 2013) ("Because our jurisdiction is limited to review for any evidence rather than for sufficient evidence, we must deny the application if there is *any evidence* to support application of the mandatory-cumulation provision.") (emphasis added). As the instant "no evidence" claim is identical to the claim Petitioner raised during his state habeas proceedings, it is unlikely that the

state court's denial was based on state procedural grounds. Thus, contrary to Respondent's argument, the claim is not procedurally barred from federal review.

In order to obtain habeas relief on this ground, however, Petitioner must show that, "upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The evidence is viewed in the light most favorable to the prosecution, and the essential substantive elements of the criminal offense are established by the state's criminal law. *Id.* at 319, 324 n.16; *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999). The TCCA implicitly found that Petitioner's "no evidence" claim (along with his other claims) lacked merit. Consequently, Petitioner must establish that the state court's denial of habeas relief on this ground was an unreasonable application of *Jackson*.

The record in this case shows that a rational trier of fact could easily have found proof of Petitioner's guilt beyond a reasonable doubt. Petitioner was charged with intentionally or knowingly delivering a prescription "for other than a valid medical purpose in the course of professional practice." (ECF No. 17-32 at 4) (tracking the language found in Texas Health and Safety Code § 481.129(c)). The State presented testimony from two confidential informants and an undercover DEA agent that Petitioner prescribed the narcotic Hydrocodone to them without a valid medical purpose and presented the jury with audio and video recordings of those interactions. (ECF Nos. 16-32 and 16-33). The State also presented the testimony of two local pharmacists that Petitioner had prescribed an unusually large amount of Hydrocodone in the past, as well as the testimony of a physician who indicated that Petitioner's prescription of the narcotic to the individuals in question did not serve a valid medical purpose. *Id.* This evidence, when viewed in the light most favorable to the prosecution, was more than sufficient to permit a

rational jury to find Petitioner guilty. *Jackson*, 443 U.S. at 318. Consequently, Petitioner has not shown that the state court's denial of his "no evidence" claim was an unreasonable application of clearly established federal law. Habeas relief is denied.

### 2. The Punishment (Amended Claim 5)

Petitioner's next allegation contends that his sentence of six years exceeds the statutory punishment range for the offenses he *should* have been indicted for. (ECF No. 4 at 36). Although indicted six times under Texas Health and Safety Code § 481.129(c) for fraud, Petitioner contends the "plain wording" of the indictments reveals the State was actually attempting to charge him with a violation under either § 481.071 or § 481.128 pertaining to commercial matters which has a punishment range of only two years as a state jail felony. For reasons unknown to this Court, Respondent has not provided a response to this allegation. Nevertheless, Petitioner's allegation is a non-starter, as the "plain wording" of the indictments clearly states he was charged with the offense of prescription fraud under Texas Health and Safety Code § 481.129(c). (ECF No. 17-41 at 4).

Furthermore, the sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. *Evans v. Cain,* 577 F.3d 620, 624 (5th Cir. 2009). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). As such, this Court is "required to accord due deference to the state's interpretation of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction." *Id.* at 69 (citations omitted). The issue is foreclosed from consideration on federal habeas review if "the sufficiency of the [indictment] was squarely presented to the highest court

of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation omitted).

Here, Petitioner does not argue that the indictments deprived the trial court of jurisdiction. (ECF No. 4 at 33). Even if he had, Petitioner's allegation was rejected during his state habeas proceedings when the TCCA denied each of his six applications without written order. (ECF Nos. 17-24, 17-27, 17-30, 17-33, 17-36, 17-39). Because the sufficiency of the indictments was squarely presented to the highest state court and that court rejected the allegation, this claim is foreclosed to federal habeas review. *Wood*, 503 F.3d at 412.

### 3. The *Miranda* Allegation (Amended Claim 6)

Petitioner next contends his *Miranda* rights were violated during a pre-trial custodial interrogation where he surrendered his DEA license to prescribe narcotics. According to Petitioner, DEA Agent Leroy Hartley presented Petitioner with a form for relinquishing his narcotics license after Petitioner had requested the presence of counsel, and he felt coerced into signing the document without the advice of counsel because he was distraught over his current circumstances. The TCCA rejected this allegation without written order when Petitioner raised it during his state habeas proceedings. This rejection was not an unreasonable application of *Miranda* and its progeny.

It has long been established that the Fifth Amendment's prohibition against compelled self-incrimination is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a State agent. *Edwards v. Arizona*, 451 U.S. 477, 484-86 (1981). Under *Miranda*, an accused must be advised of his right to remain silent and his right to the presence of an attorney prior to custodial interrogation. *Dickerson v. United States*, 530 U.S. 428, 435 (2000)

(explaining that *Miranda* protections are constitutionally required); *Miranda*, 384 U.S. at 474 (holding that once a defendant asserts his right to counsel during a custodial interrogation the interview "must cease until an attorney is present."). When an accused invokes his right to counsel, any statements obtained during subsequent police-initiated custodial questioning regarding the charge at issue are inadmissible. *Edwards*, 451 U.S. at 484-85.

In this case, it is unclear whether *Miranda* even applies in the context of Petitioner's license to prescribe narcotics. While Petitioner may have been in custody when he was approached by Agent Hartley, the act of relinquishing his DEA license was purely administrative in nature, not criminal, and did not implicate the Fifth Amendment's protections against compelled self-incrimination because the relinquishment itself was not incriminating. This is evidenced by the fact the relinquishment was not used in any meaningful sense by the State at either the guilt/innocence or punishment phases of Petitioner's trial. Petitioner all but concedes the relinquishment was not incriminating in nature by not challenging its admission; rather, Petitioner argues the uncounseled relinquishment of his DEA license led to his inability to hire an attorney to represent him at trial because the license was indispensable to Petitioner obtaining employment. But Petitioner's ability to obtain employment is not protected by the Fifth Amendment—his right to be free from compelled self-incrimination is. Petitioner's claim thus falters from the beginning.

Even if surrendering his DEA license warrants Fifth Amendment protections, Petitioner fails to demonstrate that a violation of his *Miranda* rights occurred. Although reference to the relinquishment in the record is sparse, counsel for Petitioner did raise the issue briefly during his cross-examination of Agent Hartley at the punishment phase:

> [Counsel]: Okay. So you interviewed [Petitioner] when he was in Kerr County jail; is that right?

24

[Hartley]:     Yes, sir.

[Counsel]:     And that's, in fact, where he signed the form, I guess surrendering his DEA license?

[Hartley]:     Yes, sir, his 104.

                  * * *

[Counsel]:     And when he surrendered his DEA license, you gave him a form and he signed and surrendered it, right?

[Hartley]:     Yes, sir.

[Counsel]:     Did he have—Did he have any counsel present when he did that?

[Hartley]:     No, sir.

[Counsel]:     Did you give him an attorney?

[Hartley]:     We gave him an opportunity—We advised him of his rights at that point. And he was able to request an attorney. He didn't request one at that time.

[Counsel]:     So if my client's testified that he did request one, you'd dispute that?

[Hartley]:     I would—Yes, I would dispute that.

[Counsel]:     And was that recorded?

[Hartley]:     I believe it was, yes. Yes, it was recorded.

[Counsel]:     Okay. Can you explain why the defense wasn't given the recording?

[Hartley]:     I have no idea why the defense wasn't given the recording. I didn't do the recording. But it was recorded and I was there when he was questioned about an attorney. And he—he declined at that point.

[Counsel]:     Okay.

(ECF No. 16-36 at 51-53). This testimony supports the conclusion that Petitioner was advised of his right to an attorney but declined. Although Petitioner disputes Agent Hartley's recollection, he had provided no evidence to the contrary. "Absent evidence in the record," this Court will not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)).

Regardless, even assuming Petitioner's surrender of his DEA license was the result of a *Miranda* violation and that the trial court erred in admitting it, Petitioner would still not be entitled to relief because the error was harmless. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding that the admission of an involuntary confession is subject to harmless error analysis); *Hopkins v. Cockrell*, 325 F.3d 579, 585 (5th Cir. 2003) (same). In order to be entitled to federal habeas relief, the error must have had "substantial and injurious effect or influence in determining the jury's verdict." *Hopkins*, 325 F.3d at 585 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Petitioner does not make this showing. In fact, to the extent Petitioner's surrender of his DEA license was even relied upon (if at all) by the State, it pales in comparison to the overwhelming amount of other evidence presented by the State establishing Petitioner's guilt. This evidence includes testimony from two confidential informants and an undercover DEA agent that Petitioner prescribed Hydrocodone to them without a valid medical purpose, audio and video recordings of those interactions, as well as the testimony of a physician who stated there was no valid medical purpose for Petitioner to prescribe Hydrocodone to the individuals in question. *See* Section II(B)(1), *supra*. It also includes the testimony of two local pharmacists about Petitioner's penchant for prescribing Hydrocodone in the past. *Id.*

Thus, in light of the strong amount of evidence presented in this case demonstrating Petitioner's guilt other than the surrender of his DEA license, any error in admitting the relinquishment of his license was harmless and had no prejudicial effect on the jury's ultimate guilty verdict. *Brecht*, at 637. Federal habeas relief is therefore denied.

4. The *Brady* Allegation (Amended Claim 7)

In his next allegation, Petitioner contends the State failed to disclose (1) audio and video recordings of Petitioner's pre-trial custodial interrogation (or transcripts thereof) where Agent Hartley obtained Petitioner's surrender of his DEA license in violation of his *Miranda* rights, and (2) evidence proving that Petitioner "turned away" State confidential informant Chris Gravitt on several occasions. According to Petitioner, the suppression of this evidence affected his ability to impeach the testimony of both Agent Hartley and Gravitt. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In order to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) that evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

Initially, Petitioner provides only speculative allegations that evidence was suppressed. Prior to trial, Petitioner admitted he not reviewed the 23 DVDs—somewhere between 12 and 20 hours of material—provided to him by the State. (ECF No. 16-31 at 32-35). Nevertheless, Petitioner contends the State failed to provide a copy of his custodial interrogation or evidence concerning Chris Gravitt's numerous visits to his office. Petitioner does not allege any facts to support or substantiate his claims of suppression, and conclusory allegations do not entitle a

petitioner to habeas corpus relief. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a *Brady* claim"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Furthermore, Petitioner was, or should have been, aware of the operative facts with which he wished to cross-examine Agent Hartley and his confidential informant, Gravitt—namely, the fact he had requested counsel prior to surrendering his DEA license and the fact Gravitt had allegedly visited his practice on several other occasions but was not sold Hydrocodone. Because such evidence was known to Petitioner, it was not suppressed within the meaning of *Brady*. *See Woodford v. Cain*, 609 F.3d 774, 803 (5th Cir. 2010) (stating "there can be no viable *Brady* claim when allegedly suppressed evidence was available to the defendant through his own efforts."); *Kutzner v. Cockrell*, 303 F.3d 333 (5th Cir. 2002) (holding *Brady* does not obligate the State to supply the defense with exculpatory evidence that is fully available through the exercise of reasonable diligence).

Regardless, even if this Court were to assume the evidence in question was suppressed, Petitioner's *Brady* claim must fail because he has not demonstrated the evidence was material. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 684 (1985). However, "[i]f the evidence provides only incremental impeachment value, it does not rise to the level of *Brady* materiality." *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005). "The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) (quoting *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)).

Similar to his suppression argument, Petitioner provides only speculative and conclusory assertions that the evidence in question would have been helpful to impeach the testimonies of Agent Hartley and Gravitt. But even if Petitioner could have used the evidence in question for cross-examination, it would have only provided an "incremental impeachment value" compared to the overwhelming amount of evidence mustered by the State. As discussed in the previous section, this evidence includes the testimony of two confidential informants (including Gravitt), DEA Agent Hartley, a physician, and two local pharmacists. *See* Section II(B)(1) and (3), *supra*. Their testimony, as well as audio and video recordings of the undercover interactions, established that Petitioner, on several occasions, prescribed Hydrocodone without a valid medical purpose. *Id.* Given the overwhelming nature of this evidence, Petitioner cannot establish the result of his trial would have been different had the State disclosed the evidence in question. *Bagley*, 473 U.S. at 685. Relief is therefore denied.

## C.    Petitioner's Appeal

In his final allegation (Amended Claim 8), Petitioner contends he received ineffective assistance of counsel during his direct appeal proceedings. (ECF No. 4 at 48). A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The familiar standard set out in *Strickland v. Washington*[6] to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the

---

[6]    466 U.S. 668 (1984).

outcome of Petitioner's appeal would have been different. *Robbins*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). He does neither.

Petitioner contends appellate counsel was ineffective for failing to raise several of the numerous points of error raised in the instant federal habeas proceedings. As discussed above, however, none of these allegations have merit. Appellate counsel is not required to raise every possible non-frivolous claim on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Because none of the claims Petitioner contends should have been raised are meritorious, appellate counsel was not deficient for failing to raise them. For the same reason, there is no likelihood Petitioner would have obtained relief had they been raised on direct appeal, and therefore no prejudice was caused by appellate counsel's failure to raise them. Petitioner's allegation concerning appellate counsel was rejected by the state court during his state habeas proceedings, and Petitioner has not shown this rejection on the merits to be contrary to, or an unreasonable application of, the *Strickland* standard. *Richter*, 562 U.S. at 101. Federal habeas relief is therefore denied.

### Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate

"that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El,* 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

### Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his direct appeal or state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and appellate proceedings. As a result, Petitioner's federal habeas corpus petitions do not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Richard Bruce DeBenedetto's Petitions for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) are **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in these cases; and

3.     All other remaining motions, if any, are **DENIED**, and these cases are now

**CLOSED**.

It is so **ORDERED**.

**SIGNED** this 17th day of September, 2019.


_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE